IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RIDGE DAUBE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-1107 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

O R D E R

AND NOW, this 29th day of September, 2023, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Act, 42 U.S.C. § 1381 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)).  *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse,

merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff raises several arguments on appeal. He first contends that the administrative law judge ("ALJ") erred by incompletely reviewing the record from only 2020 forward, selectively using and relying on evidence, and inaccurately assessing opinion evidence. He next contends that the ALJ failed to consider the context of the medial opinion evidence. He argues that based on the ALJ's flawed review of the record, the ALJ formulated an inaccurate residual functional capacity ("RFC") by not accounting for the frequency, duration, and severity of Plaintiff's symptoms. Lastly, Plaintiff asserts that the ALJ's decision that he is not disabled is not supported by substantial evidence because it was based on an erroneous reading of the record, inaccurate assessment of medial opinion evidence, and an incorrect RFC. (Doc. No. 15). After careful review, the Court disagrees with Plaintiff and finds that substantial evidence supports the decision of the ALJ.

The Court rejects Plaintiff's first argument that the ALJ completed an incomplete review of the record as he only reviewed records from 2020 forward. (Doc. No. 15 at 11-16). As Defendant points out, evidence is generally not relevant if it is over a year old at the time of the application date. *See* 20 C.F.R. § 416.912(b)(1)(ii) (defining a claimant's "complete medical history" as including "at least the 12 months preceding the month in which you file your application"); *Miller v. Comm'r of Soc. Sec.*, 719 Fed. Appx 130, 132-33 (3d Cir. 2017) (finding the ALJ properly considered the previous 12 months of Miller's medical records and noting that although Plaintiff asserted her disability began many years ago the ALJ was "not obligated to consider medical records dating back that far where disability benefits would not be paid for that time."). The Plaintiff included many documents in the record that pre-date his application date of July 30, 2020. (Doc. No. 17 at 15; R. 15). The ALJ was thus not required to consider any particular document that pre-dated July 30, 2019, one year before the application date. *See* 20 C.F.R. § 416.912(b)(1)(ii). In the record, there are several exhibits that contain records dated between July 30, 2019 and July 30, 2020. (*See, e.g.*, Exs. B2F, B4F). It appears that several treatment records from Southwest Behavioral Care are dated between July 30, 2019 and July 30, 2020 (R. 304-05, 310-16, 357-73), and the ALJ did cite in his opinion to several of these notes. (R. 18, 19, 21, 22 (citing Exs. B2F/22, 23)). While there are some treatment notes from this time period that were not explicitly cited by the ALJ, this does not warrant remand because, as Defendant correctly notes, the ALJ does not need to cite to every single piece of relevant evidence in the decision, and Plaintiff has not demonstrated how these specific notes would have changed the ALJ's decision. (Doc No. 17 at 15); *Phillips v. Barnhart*, 91 Fed. Appx. 775, 780 n.7 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (citation omitted).

Further, the Court finds meritless Plaintiff's argument that the ALJ erred in rejecting a doctor's opinion because of a notation that Plaintiff is stable akin to *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000). (Doc. No. 15 at 12). The situation here is distinguishable from that addressed in *Morales* because here the ALJ did not reject a doctor's opinion based on a notation that Plaintiff was stable; instead, the ALJ used Plaintiff's noted stability as one factor of many in finding the state agency consultants' opinions to be partially persuasive. (R. 22). Indeed, the ALJ noted that the state agency consultants' opinions that Plaintiff's mental condition does not preclude involvement in routine, non-complex tasks was supported and consistent with the evidence of record showing reported mood stability among other findings. (*Id.*). In sum, the ALJ's notation and reliance on Plaintiff's stability is supported by substantial evidence.

Additionally, the Court is unpersuaded by Plaintiff's argument that his presentation at the hearing should have been considered. (Doc. No. 15 at 13-14 (citing *Tremblay v. Berryhill*, No. 18-cv-381-JL, 2019 U.S. Dist. LEXIS 20783 (D.N.H. Jan. 15, 2019); *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999)). Plaintiff posits that his presentation, along with his hearing testimony, his allegations, and the medical evidence, contradict the ALJ's finding that Plaintiff is able to perform work activities. (Doc. No. 15 at 12). Plaintiff's argument seems to rest on an assumption that the ALJ was obligated to formally consider and discuss Plaintiff's presentation. However, the cases he cites do not establish or reference a duty that the ALJ must consider Plaintiff's presentation at the hearing, nor does there appear to be a binding regulation or authority demanding such a consideration. Even if such a duty did exist, the circumstances of this case and Plaintiff's own characterization of *Tremblay* makes such a consideration inapplicable here, as Plaintiff's hearing was not in-person but conducted over telephonically due to the Covid-19 pandemic. (R. 15; Doc No. 15 at 14 (citing *Tremblay*, 2019 U.S. Dist. LEXIS 20783, at *14 (stating "[w]here an ALJ makes *in-person observations* of the Plaintiff during a hearing, the Plaintiff's presentation in the hearing should be considered.") (emphasis added)).

The record also shows that the ALJ accurately assessed the medical opinion evidence. The Court first notes that for cases such as this one, filed on or after March 27, 2017, the regulations have eliminated the "treating physician rule." *Compare* 20 C.F.R. § 416.927(c)(2) (applying to cases prior to the amendment of the regulations) *with* 20 C.F.R. § 416.920c(a) (applying to later cases). *See also* 82 Fed. Reg. 5844-01, at 5853 (Jan. 18, 2017). While the medical source's treating relationship with the claimant is still a valid consideration, "the two most important factors for determining the persuasiveness of medical opinions are consistency and supportability." 82 Fed. Reg. at 5853. *See also* §§ 416.920c(b) and (c). "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Pipkin v. Kijakazi*, No. CV 22-2-E, 2023 WL 411291, at *1 n.2 (W.D. Pa. Jan. 25, 2023) (quotation omitted). Here, the ALJ accurately applied the consistency and supportability

3

standards through the following analysis:

> Dr. Schiller and Dr. Tarter opined mild to moderate limitation in the paragraph "B" criteria. They further opined that the claimant's mental condition does not preclude involvement in routine, non-complex tasks/activities. On reconsideration, Dr. Tarter opined that the claimant could perform simple, routine tasks in a stable environment; and understand, retain, and follow simple instructions. To support their findings, the State Agency consultants referred to the claimant's diagnoses of Bipolar I disorder, cocaine use, opioid use, and alcohol use disorder, as well as allegations of anxiety in public and reported problems with memory and concentration. . . A finding that the claimant can perform simple routine tasks is consistent with the evidence of record showing generally normal thought and normal cognition during mental status exams as well as reported mood stability . . .

(R. 22). Accordingly, substantial evidence supports the ALJ's analysis of the state agency medical consultants' opinions.

The Court also rejects Plaintiff's argument that the ALJ failed to consider the context of the medial opinion evidence. (Doc. No. 15 at 17-19). This argument primarily relates to the amount of time that passed between the state agency consultants' opinions and the timing of the ALJ's reliance on them. The Court first notes that the controlling regulations do not place any limit on how much time may pass between an opinion and the ALJ's reliance on the same. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Further, there does not seem to be an unreasonable amount of time between the consultants' opinions, which were completed on October 1, 2020 and February 2, 2021, and the ALJ's opinion, which was issued on August 31, 2021. (R. 24, 69, 86). While in some cases this passage of time may matter, especially when there are intervening medical records that at least raise the possibility that Plaintiff's condition has changed over this time, *see Page v. Comm'r*, No. 16-20-J, 2017 WL 1198383, at *4 (W.D. Pa. Mar. 31, 2017), here there are no new diagnoses within this passage of time in Plaintiff's case. The intervening medical records simply re-hash what Plaintiff has sought medical treatment for in the past – bipolar disorder. (*See, e.g.*, R. 343-52, 377-83); *see Kirkpatrick v. Comm'r*, 2019 WL 4597579, at *1 n.1 (W.D. Pa. Sept. 23, 2019) (distinguishing *Page* and affirming because the intervening medical evidence showed the Plaintiff's symptoms simply continued despite new diagnoses and no new or worsening conditions were shown). This is also reflected in the opinions of the state agency consultants, who came to similar conclusions despite the passage of time. (R. 22). Accordingly, the Court is not persuaded that the state agency consultants' opinions were stale merely because they did not have access to the complete record.

Additionally, the Court finds no merit to Plaintiff's argument that that ALJ crafted an inaccurate RFC by not accounting for the frequency, duration, and severity of Plaintiff's symptoms and by having an inaccurate understanding of the evidence in the case. (Doc. No. 15 at 19-20). The record reflects that the ALJ sufficiently accounted for Plaintiff's mental health symptoms; the ALJ thoroughly reviewed and recounted the evaluation findings spanning from 2020 to 2021, noting Plaintiff's diagnoses of cocaine use disorder, opioid use disorder, alcohol use disorder, and Bipolar I, moderate. (R. 20-23). Further, Plaintiff relies primarily on his own testimony when making this argument, and the ALJ thoroughly explained why he rejected Plaintiff's testimony in his opinion. (R. 22). The ALJ noted that Plaintiff testified that he experiences tremors resulting from his use of Lithium, but the ALJ found no support for that in the record as Plaintiff had repeatedly reported to his doctors that he experienced no side effects from his medications. (R. 22 (citing Exs. B2F/22; B3F/7, 10; B4F/24, 27, 34, 37; B6F/1, 4)). The ALJ also found Plaintiff's alleged symptom of paranoia unconvincing as the record showed Plaintiff "reported mood stability, clarity, and denied significant issues with feelings of depression, anxiety, or irritability." (R. 22 (citing Ex. B6F/14, 18, 20, 22, 24, 28, 30, 32)). The ALJ noted that Plaintiff continued a consistent dosage of Lithium and was assessed as stable by his providers. (R. 22 (citing Exs. B3F/10, 11; B6F/34, 36, 38, 40).

The Court also finds meritless Plaintiff's argument that the ALJ selectively used and relied on evidence. (Doc. No. 15 at 11-16). Plaintiff argues the ALJ relied on notations of stable mood, intermittent reports of normal insight, and ability to care for his dogs as evidence that Plaintiff had the understanding, memory, ability to interact with others, concentration, attention, and ability to adapt as required to perform work activities when the medical evidence and Plaintiff's testimony contradicted these findings. (*Id.* at 12). The Court rejects this argument for several reasons. First, the ALJ permissively rejected Plaintiff's testimony as explained above. Second, it is clear from the ALJ's discussion that he assessed the entire record when deciding Plaintiff's claim. Plaintiff points to notations of his "usual irritability and neediness" in treatment notes (R. 387) and his anger outbursts (Doc. No. 15 at 13, 16), but the ALJ clearly considered Plaintiff's anger outbursts as he noted "in consideration of moderate limitations in interacting with others and instances of anger outbursts, the undersigned has included limitations to interacting with others." (R. 22).

Moreover, Plaintiff's argument that evidence was lost due to telehealth appointments is not persuasive. As Defendant points out, the ALJ discussed the mental status examination findings that were contained within the records for these telehealth visits. (R. 20-21). In this way, the ALJ did not take a lack of evidence from these telehealth visits as a lack of occurrence of symptoms, as Plaintiff argues. Further, the ALJ's consideration of Plaintiff caring for his dog as evidence that Plaintiff could perform work activities is permissible. The Third Circuit Court of Appeals has found an ALJ appropriately considered activities, such as caring for a pet, in making credibility determinations. *Burns v. Barnhart*, 312 F.3d 113, 120, 129-30 (3d Cir. 2002). While these activities of daily living

5

may not alone support a finding of non-disability, the ALJ can consider these activities in in determining that Plaintiff's testimony regarding the severity of symptoms lacks credibility. *See* 20 C.F.R. § 416.929(c)(3)(i); *Hoyman v. Colvin*, 606 Fed. Appx. 678, 681 (3d Cir. 2015). Here, the ALJ permissively used evidence that Plaintiff cares for his dogs in conjunction with medical evidence to conclude that Plaintiff's testimony is not fully credible as to the intensity, persistence, or frequency of his symptoms. (R. 22, 23). Accordingly, substantial evidence supports the ALJ's determination.

The Court also finds without merit Plaintiff's argument that the ALJ failed to account for his mental health limitations. The ALJ thoroughly addressed Plaintiff's limitations when analyzing the "paragraph B" criteria at Step Three of the sequential process. (R. 18-19); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (holding that an ALJ's decision must be "read as a whole"). Here, the ALJ considered Plaintiff's mental health limitations on his ability to understand, remember, apply information, interact with others, concentrate, persist, maintain pace, adapt, and manage oneself. (R. 18). The ALJ found Plaintiff had a mild limitation in his ability to understand remember, or apply information based on Plaintiff's report that he can perform household chores, care for his two dogs, and his treatment records showing that his cognition was within normal limits. (*Id.*). The ALJ found Plaintiff's ability to interact with others had a moderate limitation because while Plaintiff reported that he gets anxiety when out in public, does not socialize much, has lost friendships due to his bipolar symptoms, and has anger outbursts, treatment notes indicated that Plaintiff is generally cooperative, and has normal impulse control. (*Id.*). The ALJ further found that Plaintiff had a moderate limitation in his ability to concentrate, persist, or maintain pace based on Plaintiff's reports that he has difficulty staying on task, among other things, and his treatment records stating that he is present and engaged throughout the entirety of his therapy. (R. 19). Finally, the ALJ found that Plaintiff had a mild limitation in his ability to adapt or manage himself based on his ability to care for his dog, do household chores, and his treatment records showing that he consistently denied homicidal and suicidal ideation and generally exhibited normal insight. (*Id.*). From this analysis, it is clear that the ALJ considered all of Plaintiff's mental limitations and analyzed his limitations based on the totality of the record. Plaintiff may claim that he requires more than 10% off-task time and more than one absence per month (Doc. No. 15 at 20), but substantial evidence supports the ALJ's finding to omit these restrictions from Plaintiff's RFC.

Finally, the Court rejects Plaintiff's final argument that the ALJ erred in finding that Plaintiff is not disabled. This argument appears to the Court to be a rehashing of Plaintiff's previous arguments and an attack on the vocational expert's ("VE") testimony. To the extent that Plaintiff takes issue with the hypothetical posed to the VE and the ALJ's reliance thereon, the Court notes that "objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself." *Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005). Hypotheticals posed to vocational experts need not reflect every impairment alleged by a claimant. *See id.* at 544. Instead,

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED that and Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED.

s/Alan N. Bloch<br>
United States District Judge

ecf:	Counsel of record

---

hypotheticals "must accurately convey to the vocational expert all of a claimant's *credibly established limitations.*" *Id.* (emphasis in original).  Substantial evidence supports the ALJ's RFC assessment, and because the operative hypothetical accurately conveyed Plaintiff's RFC, the ALJ appropriately relied upon the vocational expert's response.

Accordingly, the Court affirms.